IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONWIDE BI-WEEKLY ADMINISTRATION, INC., § § § | | |
| Plaintiff, § § | | |
| v. § | Civil Action No. 3:06-CV-0600-N | |
| § | | |
| BELO CORP., *et al.*, § § | | |
| Defendants. § | | |

## ORDER GRANTING MOTION TO DISMISS

Defendants Belo Corp., the *Dallas Morning News*, and Scott Burns (collectively, "Belo") filed a Motion to Dismiss [30] this action pursuant to Federal Rule of Civil Procedure 12(b)(6) on May 30, 2006. Because the Court finds that the applicable statute of limitations bars plaintiff Nationwide Bi-Weekly Administration's ("Nationwide") claims for defamation, tortious interference, and business disparagement, the Court grants Belo's Motion to Dismiss and dismisses this action with prejudice.

### I. ORIGINS OF THE COMPLAINT AND PROCEDURAL HISTORY

On July 29, 2003, the *Dallas Morning News* published an allegedly defamatory article by financial writer Scott Burns about an accelerated mortgage program offered by Nationwide. Soon thereafter, the article appeared on the *Dallas Morning News* website, making the article available to Internet users via the website and through Internet search engines. Neither party alleges a specific date for the Internet posting.

Nationwide filed a complaint in Ohio state court on July 28, 2004, asserting claims for defamation, tortious interference with prospective business relations, and business disparagement. Each of these claims relates to the July 29, 2003 publication of Burns's article in the *Dallas Morning News*. Upon service of the complaint in June of 2006, Belo removed the case to the United States District Court for the Southern District of Ohio. Belo then moved to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), to which Nationwide responded by moving to transfer venue to this Court. The court then transferred the case to this Court pursuant to 28 U.S.C. § 1406(a).

## II. BELO TIMELY MOVED TO DISMISS

Nationwide urges the Court to deny Belo's motion to dismiss as untimely under Federal Rules of Civil Procedure 12(a)(1)(A), 12(a)(4)(A), and 81(c). Furthermore, Nationwide argues that, as Belo's second Rule 12 motion to dismiss, the motion violates Rule 12(g)'s consolidation requirement.

The Court finds that both of these arguments lack merit. First, the deadlines in Rules 12(a) and 81(c) relate to answers and responsive pleadings, not to motions to dismiss such as the one before the Court. Second, Rule 12(g) requires defendants to consolidate only defenses that are "then available" when a party files a Rule 12 motion. FED. R. CIV. P. 12(g). Belo bases its current motion to dismiss on the Texas statute of limitations, an affirmative defense that became available only once the Ohio court transferred the case. Thus, Rule 12(g) did not require Belo to assert the statute of limitations defense in its earlier motion to dismiss.

Accordingly, the Court finds that Belo timely filed its Rule 12(b)(6) motion and will consider the motion on its merits.

### III. THE STATUTE OF LIMITATIONS BARS NATIONWIDE'S CLAIMS

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A district court may dismiss a complaint for failure to state a claim only if it is clear that the plaintiff can prove no set of facts consistent with the allegations of the complaint that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). In ruling on a Rule 12(b)(6) motion, the court must limit its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). In the context of the statute of limitations, a court may properly dismiss an action if the face of the pleadings indicates that the applicable statute of limitations bars the plaintiffs claim. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

#### *A. Nationwide Failed to Exercise Diligence in Serving Belo*

Under Texas law, the statute of limitations for a libel action is one year.[1] TEX. CIV. PRAC. REM. CODE § 16.002(a). The limitations period begins to run upon publication of the defamatory material. *Williamson v. New Times*, Inc., 980 S.W.2d 706, 710 (Tex. App. – Fort Worth 1998, no pet.). The *Dallas Morning News* published the allegedly defamatory article in its July 29, 2003 print edition, and Nationwide filed its complaint on July 28, 2004,

---

[1] All parties agree that the Texas statute of limitations applies.

within the applicable limitations period.  However, the mere filing of a suit will not interrupt or toll the running of the limitations period if the plaintiff does not exercise due diligence in procuring the issuance of service and citation upon the defendants.  *Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1109-11 (5th Cir. 1981).  Here, Nationwide inexplicably failed to effect service upon Belo until June, 2005, nearly ten months after filing its complaint.  Moreover, Nationwide does not argue that any fact beyond the face of the pleadings would establish due diligence.  Accordingly, the Court holds that Nationwide failed to exercise due diligence in having Belo served and, thus, failed to bring its cause of action for defamation within the applicable limitations period.  *See Hansler v. Mainka*, 807 S.W.2d 3, 5 (Tex. App. – Corpus Christi 1991, no writ) (holding that an unexplained five-month delay in serving defendants established a lack of diligence as a matter of law).

### *B. The Single Publication Rule Applies to Internet Publications*

Nationwide asserts that because the alleged harm stems primarily from the online circulation of the article, the statute of limitations period should begin to run on the date the *Dallas Morning News* posted the article on the Internet, not the date of the print publication.  Furthermore, Nationwide claims that a republication of the article occurs every time an Internet user types Nationwide's name into a search engine and retrieves the article, so that each "hit" retriggers the statue of limitations.  Thus, according to Nationwide, the uncertainty about when the *Dallas Morning News* posted the article and the article's continual republication preclude the Court from dismissing the case on limitations grounds.

Nationwide's argument requires the Court to consider the application of Texas defamation law in the context of the Internet, an issue that Texas courts have yet to address. In the absence of controlling Texas law, the Court must analyze the relevant law in Texas and attempt to predict how a Texas court would rule on the issue. *See American Reliable Ins. v. Navratil*, 445 F.3d 402, 406 (5th Cir. 2006).

In cases alleging libel in mass media, Texas courts apply the "single publication rule," the purpose of which is to prevent plaintiffs from bringing stale and repetitive claims against publishers. *See Williamson*, 980 S.W.2d at 710; *Holloway v. Butler*, 662 S.W.2d 688, 692 (Tex. App. – Houston [14th Dist.] 1983, writ ref'd n.r.e.). Under the single publication rule, a libel action accrues upon "publication," which Texas courts have defined as "the last day of the mass distribution of copies of the printed matter." *Williamson*, 980 S.W.2d at 710. In this regard, Texas courts have held that retail sales of individual copies or sales of back issues of the printed matter do not constitute new publications that retrigger the statue of limitations. *Holloway*, 662 S.W.2d at 692. In short, the courts view the mass communication of a single defamatory statement as a single wrong that gives rise to only one action. *Id.* at 691.

Although Texas courts have yet to address the applicability of the single publication rule in the context of the Internet, the few jurisdictions that have considered the issue have applied the rule to Internet publications for statute of limitations purposes. *See Traditional Cat Ass'n, Inc. v. Gilbreath*, 13 Cal. Rptr. 3d 353, 354 (4th Dist. 2004); *McCandliss v. Cox Enterprises, Inc.*, 593 S.E.2d 856, 858 (Ga. Ct. App. 2004); *Mitan v. Davis*, 243 F. Supp. 2d

719, 724 (W.D. Ky. 2003) (applying Kentucky law); *Churchill v. State*, 876 A.2d 311, 316 (N.J. Super. Ct. App. Div. 2005); *Firth v. State*, 775 N.E.2d 463, 465–66 (N.Y. 2002).

The Court finds *Firth* instructive, considering that Texas courts have already indicated approval of its underlying reasoning. *See Holloway*, 662 S.W.2d at 691 (citing *Gregoire v. G.P. Putnam's Sons*, 81 N.E.2d 45 (N.Y. 1948), with approval, a case on which the *Firth* court relied in extending the single publication rule to Internet publications). In *Firth*, a public employee sued the state for publishing an allegedly defamatory report on the State's website. *Firth*, 775 N.E.2d at 464. The employee, like Nationwide, argued that the single publication rule should not apply to Internet publications because online material is available only to those who seek out the specific article, and therefore, each "hit" or viewing of the report constitutes a new publication or republication for limitations purposes. *Id.* at 465. The New York Court of Appeals flatly rejected this argument, holding that the concerns underlying the single publication rule – namely, preventing the "endless retriggering of the statute of limitations" and promoting the "open [and] pervasive dissemination of ideas" – applied with even greater force to Internet publications. *Id.* at 466. According to the court, a "multiple publication rule would implicate even greater potential for endless triggering of the statute of limitations, multiplicity of suits and harassment of defendants," which would hinder the development of a robust marketplace of ideas. *Id*.

The Georgia Court of Appeals also affirmed the dismissal of a defamation claim in a case with facts that are strikingly similar to those presented here. *McCandliss*, 593 S.E.2d at 858. In *McCandliss*, the plaintiff sued the *Atlanta Journal-Constitution* for publishing an

allegedly defamatory article in its print edition and then *later* posting the article in the articles archive section of its website. *Id.* at 857. The plaintiff proffered the same argument made by Nationwide, maintaining that because the website owner retained the ability to alter the website and the article, the Internet version of the article constituted a new publication for statute of limitations purposes each time a new user viewed the article. *Id.* at 858. Employing the same reasoning as *Firth*, the court rejected the plaintiff's argument and held that the single publication rule applied, thus barring plaintiff's claim. *Id.*

The Court believes the Texas Supreme Court would follow the reasoning of *Firth* and *McCandliss* and hold that the single publication rule bars Nationwide's claim. Texas courts adopted the single publication rule to address the widespread and simultaneous distribution of defamatory material through mass media in a manner that accounts for both plaintiffs' concern in obtaining a remedy, as well as the courts' desire to promote fairness, judicial efficiency, and the free flow of ideas. *See Holloway*, 662 S.W.2d at 691. To apply a multiple publication rule to the Internet while applying the single publication rule to traditional mass media not only would be inconsistent, but also would undermine the pursuit of these goals. Furthermore, the Court sees no rational reason for distinguishing between the Internet and other forms of traditional mass media. As stated by one court, "the Internet [is] particularly suited to application of the single publication rule because it is rapidly becoming . . . the current standard for the mass production, distribution, and archival storage of print data and other forms of media." *Churchill*, 876 A.2d at 319. Accordingly, the Court holds that the single publication rule applies in this case, and that Nationwide's claim accrued when

*The News* published the allegedly defamatory article on July 29, 2003. The statute of limitations, thus, bars Nationwide's defamation claim.

### C. The One-Year Statute of Limitations Bars Nationwide's Business Disparagement and Tortious Interference Claims

Nationwide argues that the two-year statute of limitations stated in section 16.003 of the Texas Civil Practice and Remedies Code applies to its claims for tortious interference and business disparagement, not the one-year statute of limitations applicable in libel actions. The Court disagrees.

Texas courts have clearly established that when allegedly defamatory statements form the sole basis of a plaintiff's tortious interference claim, the one-year statute of limitations applies. *See Peavy v. Harmon*, 37 F. Supp. 2d 495, 524 (N.D. Tex. 1999) (applying Texas law); *Proctor & Gamble Co. v. Amway Corp.*, 80 F. Supp. 2d 639, 657 (S.D. Tex. 1999) (applying Texas law); *Martinez v. Hardy*, 864 S.W.2d 767, 776 (Tex. App. – Houston [14th Dist.] 1993, no writ); *Moore & Assoc. v. Metropolitan Life Ins. Co.*, 604 S.W.2d 487, 491 (Tex. App. – Dallas 1980, no writ). Nationwide bases its tortious interference claim on the fact that "prospective customers have seen the false statements in the [a]rticle." Nationwide's tortious interference claim is, thus, indistinguishable from its defamation claim and barred by the one-year statute of limitations. *See Proctor & Gamble*, 80 F. Supp. 2d at 657 (finding that the one-year statute of limitations barred the plaintiff's tortious interference claim where the plaintiff merely asserted that the defendant's "false and misleading statements . . . tortiously interfere with the [plaintiff's] business relations").

Likewise, Texas courts have consistently held that the one-year statute of limitations applies to business disparagement claims when the gravamen of the complaint is defamatory injury to the plaintiff's reputation. *See Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 766–67 (Tex. 1987); *Newsom v. Brod*, 89 S.W.3d 732, 735 (Tex. App. – Houston [1st Dist.] 2002, no pet.); *Williamson*, 980 S.W.2d at 710–11. As with its tortious interference claim, Nationwide bases its business disparagement claim on the allegedly defamatory statements contained in the article and does not provide any meaningful basis on which to distinguish this claim from the defamation claim. In order to assert separate and distinct claims for defamation and business disparagement, a plaintiff must allege economic harm beyond the defamatory injury to the plaintiff's reputation, such as specific lost sales. *See Williamson*, 980 S.W.2d at 710. Here, Nationwide alleges that the false statements contained in the article "demean the quality and value" of Nationwide's services, but fails to allege any specific economic loss as part of its business disparagement claim. The Court, therefore, finds that the defamation claim predominates and that the one-year statute of limitations applies to Nationwide's business disparagement claim.

### IV. CONCLUSION

The statute of limitations bars Nationwide's claims for defamation, tortious interference, and business disparagement. Accordingly, the Court grants Belo's motion to dismiss and dismisses Nationwide's claims with prejudice.

Signed October 16, 2006.

_____
David C. Godbey
United States District Judge